# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER: 7 |
| **VISTA-PRO AUTOMOTIVE, LLC** ) | CASE NO.: 3:14-bk-09118 |
| ) | JUDGE: MASHBURN |
| 22 Century Blvd., Suite 410 ) | |
| Nashville, TN 37214 ) | |
| ) | |
| Debtor. ) | |
| ) | |
| **VISTA-PRO AUTOMOTIVE, LLC** ) | |
| ) | |
| Plaintiff, ) | |
| ) | ADV. PRO. 3:15-ap-90079 |
| v. ) | |
| ) | |
| **CONEY ISLAND AUTO PARTS** ) | |
| **UNLIMITED, INC.** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT**

**Argument**

I. **Vista-Pro Did Not Validly Serve Coney Island by Mailing Process to the Address In New York's Corporate Records Because That Address is Only for Service Via the New York Secretary of State.**

The Trustee's initial argument is that service upon Coney Island was proper because Vista-Pro mailed the documents to the address on file with the New York Secretary of State, which constitutes service upon "any other agent authorized by appointment or by law to receive service of process" pursuant to Rule 7004(b)(3). The Trustee misconstrues the Rule and the purpose of the address in the Secretary of State's office.

First, the Rule plainly differentiates between the corporation and the agent. It states that service upon a corporation may be mailed to an officer or to various types of "agents" of the corporation, i.e., *third parties* who act on behalf of the corporation. The Rule does not envision that the corporation will be its own agent because then the requirement of mailing process to an agent would be superfluous. *In re Main St. Tours, Inc.*, 2021 Bankr. LEXIS 1581, at *11 (Bankr. N.D. Ohio June 3, 2021) (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) ("[C]ourts should construe statutes and rules such that they are not rendered superfluous or meaningless."); *Yates v. United States*, 574 U. S. 528, 543 (2015) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme") (internal quotation marks and brackets omitted).

Further, the purpose of inserting the corporate address into the Department of State's records is to permit the Secretary of State to serve process. New York is somewhat unique in that it permits any domestic or registered foreign corporation to be served with any process whatsoever by way of the Secretary of State. *See* N.Y. Bus. Corp. Law § 304(a). Further, such service is valid and complete when the papers are delivered to the Department of State. *Id.* § 306(b). Upon delivery of the papers, the Secretary of State mails them via "certified mail, return receipt requested, to such corporation, at the post office address, on file in the department of state, specified for the purpose." *Id.* Thus, Vista-Pro incorrectly asserts that the address on file was valid service upon an "agent" as envisioned by Rule 7004(b)(3). Rather, that is simply the address to which the Secretary of State would mail papers pursuant to the Business Corporation Law. Had Vista-Pro followed that procedure, service would have been effective pursuant to Rules 7004(b)(3) and/or (b)(7). But it did not, and therefore service was not proper.

2

Moreover, Vista-Pro clearly had knowledge that Daniel Beyda was Coney Island's chief executive officer. [*See* Adv. Docket No. 52-1]. If its mailing had been to him, or even to "Chief Executive Officer," service would have been valid.

## II. The Trustee Erroneously Conflates the Burden of Showing Validity of Service with Whether Knowledge of the Litigation Suffices In Lieu of Valid Service.

Next, the Trustee argues that because Coney Island had actual knowledge of this proceeding, it has the burden of showing that it did not receive the various documents that Vista-Pro mailed to it (though concededly not as required by Rule 7004). This argument is erroneous because it rests on incorrect assumptions and a misapplication of the law.

First, the Trustee is incorrect that the burden of showing the invalidity of service rests with Coney Island. She cites case law from around the country that a party with actual knowledge of the litigation bears the burden pursuant to Rule 60(b)(4). But that is not the uniform rule, and just as many circuits do not follow it. *See Cunningham v. Enagic USA, Inc.*, 2019 U.S. Dist. LEXIS 34013, at *9 (M.D. Tenn. Feb. 15, 2019) ("Some courts have found that this presumption [of plaintiff always needing to show the existence of jurisdiction] remains and that the burden stays with the plaintiff no matter the stage at which service is challenged."). The Sixth Circuit has never directly addressed this particular issue. *Id.* at *10.

Further, the Trustee incorrectly contends that the presumption of receipt of a properly addressed piece of mail equates to actual knowledge of the litigation, especially in the case of a corporate entity. She cites no case for that proposition, and case law around the nation is directly to the contrary. *See Foster v. C4B, LLC (In re Shoot the Moon, LLC)*, 2019 WL 5866147, 2019 Bankr. LEXIS 3502, at *4 (Bankr. D. Mont. Nov. 8, 2019) ("While the complaint and summons were mailed to the correct address (though identifying the wrong entity), such mailing does not equate to adequate service or require an inference of actual knowledge or notice."); *Savage &*

3

*Assocs., P.C. v. 1201 Owner Corp. (In re Teligent, Inc.)*, 485 B.R. 62, 69 (Bankr. S.D.N.Y. 2013) ("Mailing process to a corporation's post office box without directing it to the attention of the proper agent does not satisfy Rule 7004(b)(3) . . . and does not give rise to a presumption that the appropriate person within the organization received actual knowledge of the suit."); *Beneficial Cal., Inc. v. Villar (In re Villar)*, 317 B.R. 88, 94-95 (9th Cir. B.A.P. 2004) ("A presumption that the mail was received by Beneficial does not include the presumption that the motion was received by an officer or authorized agent."). Indeed, if the Trustee were correct that mere mailing to a corporation provides it with actual knowledge, Rule 7004(b)(3)'s requirement of mailing to an authorized agent would be superfluous. This is another instance of the Trustee attempting to circumvent the plain requirement of the Rule.

In support of her position that actual knowledge alone suffices, the Trustee cites to *Criollo v. N.Y. Fine Interiors*, 2021 U.S. Dist. LEXIS 64632 (S.D.N.Y. Mar. 3, 2021), which held that "courts will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has 'actual notice' of the documents mailed." *Id.* at *17. But as just noted, the presumption of receipt is not equal to a presumption of actual notice. Further, that court decided service was proper by way of personal delivery of process and service upon the New York Secretary of State. *Id.* at *24-25. Thus, the holding about "actual notice" being a substitute for valid service was *obiter dictum* at best because the service there was not via mail and the defendants were properly served. *Id.* Moreover, regarding partial compliance with rules of service, the *Criollo* court cited only *Burda Media, Inc. v. Blumenberg*, 2004 WL 1110419, 2004 U.S. Dist. LEXIS 8804 (S.D.N.Y. May 18, 2004), which is readily distinguishable from this action. In *Burda*, the issue was whether the plaintiff effectuated valid service pursuant to the Hague Convention when French police officers serving the documents did not fill out one part of a document describing the service. *Id.* at *17.

4

In that circumstance, the court held that there was no doubt that the proper defendant received service, and the only error lay in a ministerial act that did not impact the service that was by then already completed. *Id.* at *18. *Burda* would only apply here if the defect were to be something along the lines of a scrivener's error in an affidavit of service that was otherwise valid.

The Trustee concludes that "[h]aving established that these documents were all mailed to the corporation (who itself was listed as the agent for service of process), the burden now rests with the Defendant to prove that it was not properly served." [Adv. Docket No. 52, p. 9]. Even if, *arguendo*, the Trustee were correct, Coney Island has conclusively shown that it was not properly served because Vista-Pro's mailing of process did not comply with Rule 7004(b)(3). Try as it might, Vista-Pro can neither avoid nor deny this fact.

### III. Whether a Defendant Received Due Process of Law is Not the Benchmark for a Motion to Vacate a Void Judgment.

The Trustee next argues not only that valid service is unnecessary, but that entry of judgment without valid service does not violate due process. This is incorrect. The Supreme Court has held, going back decades, that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999). "Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351; *Langeland v. Tru Die Cast Corp. (In re PT Liquidation Corp.)*, 580 B.R. 488, 489 (Bankr. W.D. Mich. 2018) ("In general, to ensure that it has personal jurisdiction over defaulting defendants, and to protect its judgments against collateral attack with the attendant and avoidable expense, the court scrupulously reviews proofs of service, as it did in this case. Every plaintiff's attorney should do the same, carefully

5

supervising the jurisdictionally significant act of serving the summons and complaint – the singular event that formally subjects a person to the court's authority."). The Trustee's attempts to show contrariwise are inconsistent with the case law.

The Trustee cites *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010), and claims that it stands for the proposition that "[w]here a party has actual notice of the proceeding, any due process concerns are satisfied." [Adv. Docket No. 52, p. 10]. Not even remotely so. At issue in *Espinosa* was whether discharge of student loan debt obtained without proper service upon the creditor was valid. *Id.* at 263. Once the debtor filed the plan, the bankruptcy court mailed a copy to the creditor, which, in response, filed a notice of claim, but "did not object to the plan's proposed discharge of Espinosa's student loan interest without a determination of undue hardship, nor did it object to Espinosa's failure to initiate an adversary proceeding to determine the dischargeability of that debt." *Id.* at 265. The court confirmed the plan without an adversary proceeding or a finding of undue hardship, and the creditor received notice but again failed to object. *Id.* Years later, the creditor moved to vacate the judgment pursuant to Rule 60(b)(4). The Supreme Court granted *certiorari* because of a split in the courts of appeals on the issue of whether discharge of student loan debt in the absence of an adversary proceeding is a jurisdictional defect. *Id.* at 268. The Court found that it is not because the requirement that an adversary proceeding be the vehicle to determine the existence of undue hardship is a "procedural rule" and "not jurisdictional." *Id.* at 272. Indeed, the creditor "concede[d] that the Bankruptcy Court had jurisdiction to enter the order confirming Espinosa's plan." *Id.* Nor could it deny the bankruptcy court's jurisdiction when it clearly received notice of the plan and filed a notice of claim in response. *Id.* at 275 ("United filed a proof of claim regarding Espinosa's student loan debt, thereby submitting itself to the Bankruptcy Court's jurisdiction with

6

respect to that claim."). Nowhere in *Espinosa* did the Court hold that valid service of process is irrelevant. To the contrary, it reaffirmed that Rule 60(b)(4) may be used to attack judgments that are void due to a "fundamental infirmity," one type of which is "jurisdictional error." *Id.* at 270-71; *Perfect Score Co. v. Miller*, 2011 WL 4540742, 2011 U.S. Dist. LEXIS 111878, at *9 (N.D. Ohio Sept. 29, 2011) ("if service of process is not proper, the judgment is void, and the court must set aside Defendant's default judgment" (citing *Espinosa*)).

The Trustee also cites *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995), which held that "[w]hether or not the judgments here were voidable because Atlas was not served turns on whether Atlas had actual notice of them." *Id.* at 109. In *Atlas*, however, the issue was whether the court "erred in denying its motion to set aside the default judgments because plaintiffs had served Conroy, its former counsel, rather than Atlas itself, *with the application for default and the default judgments*." *Id.* at 108 (emphasis added)). Atlas did not contend that the court lacked personal jurisdiction over it due to improper service of process. Thus, that decision is inapt.

Also in the same vein is the Trustee's citation to *SunTrust Bank v. Braden (In re Braden)*, 516 B.R. 672 (Bankr. S.D. Ga. 2014). There, the issue was whether the creditor received debtor's lien-stripping motion; again, therefore, the case had nothing to do with the court's jurisdiction over the creditor. *Id.* at 674. Moreover, the debtor had served his motion via certified mail at four separate locations, including upon two registered agents. *Id.* at 675. And the creditor conceded, as it must, that it received the motion. *Id.* at 679.

Respectfully, the Trustee cannot overcome the Sixth Circuit's repeated holdings that "it will not allow actual knowledge of a lawsuit to substitute for proper service[.]" *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999); *Atlas*, 66 F.3d at 108 ("if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate

the judgment under Rule 60(b)(4)"); *see also Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service[.]") The Trustee's arguments to the contrary are ineffectual.

IV. **Laches is Irrelevant to a Rule 60(b)(4) Motion Because the Passage of Time Cannot Cure a Void Judgment.**

Coney Island argued in its opening brief that laches is inappropriate in connection with a Rule 60(b)(4) motion to vacate a void judgment. *See O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003), *overruled on other grounds*, 142 S. Ct. 1708 (2022) (holding that a court reviewing a request for relief based on a void judgment need not consider any equitable factors). Moreover, courts have consistently held that a judgment void *ab initio* is not revived by the mere passage of time. *Church v. Charter Plymouth*, 2008 U.S. Dist. LEXIS 145618, at *18 (E.D. Mich. Sept. 30, 2008); *Jackson v. FIE Corp.*, 302 F.3d 515, 523-24 (5th Cir. 2002) ("[T]here is no time limit on Rule 60(b)(4) motions, and [the] doctrine of laches has no effect. As a general rule, the fact that such a motion is made long after the entry of a default judgment should not be an obstacle to the jurisdictional inquiry."); *Hertz Corp. v. Alamo Rent-A-Car*, 16 F.3d 1126, 1130 (11th Cir. 1994) (collecting cases and concluding that "*no court* has denied relief under Rule 60(b)(4) because of delay" (emphasis in original and citation omitted)); *Owens-Corning Fiberglass Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir. 1985) ("[A] void judgment cannot acquire validity because of laches on the part of the judgment debtor (Owens-Corning in this case). . . . Therefore, Owens-Corning's delay in bringing its Rule 60(b)(4) motion is irrelevant and the motion was timely.").

Further, as then-Judge Ginsburg explained:

> A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election. He may appear, raise the jurisdictional objection, and

8

> ultimately pursue it on direct appeal. If he so elects, he may not renew the jurisdictional objection in a collateral attack.
>
> . . .
>
> Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default judgment will be vacated. If he loses on the jurisdictional issue, on the other hand, his day in court is normally over; as a consequence of deferring the jurisdictional challenge, he ordinarily forfeits his right to defend on the merits.

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

Notwithstanding this clear guidance, the Trustee cites to *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899 (6th Cir. 2006), and claims that there the Sixth Circuit held that "waiting over eleven months to file a Rule 60(b)(4) motion did not comply with Rule 60(c)'s [sic] reasonable time requirement, and the court affirmed the denial of a motion to vacate a default judgment." [Adv. Docket No. 52, p. 12]. The Trustee misconstrues this opinion. *Patel* involved a curious fact pattern where the plaintiff mistakenly served the defendant at an incorrect address; the defendant obviously did not receive service; the plaintiff moved for judgment by default and the court scheduled a hearing; the plaintiff then properly served the defendant at the correct address with both the motion and the summons and complaint; the defendant did not appear at the default judgment hearing; the court entered the default judgment; and the defendant then waited eleven months to vacate the judgment, arguing that it was void. *Id.* at 902-03. On those peculiar facts, the Sixth Circuit found that the district court obtained personal jurisdiction over the defendant by way of the second mailing, and agreed that, jurisdiction having been acquired, defendant waited

9

too long to vacate the judgment. *Id.* at 905-06. The difference between *Patel* and this case is palpable. In the former, as his counsel conceded, the court had jurisdiction over the defendant by way of the second round of service. *Id.* at 904-05. By contrast, this Court never acquired jurisdiction over Coney Island because it was never properly served. The Trustee attempts to avoid this deficiency by arguing again that Coney Island received its mailings, but as discussed above, receipt of a mailing does not equate to valid service or a corporation's actual knowledge of an action.

Similarly, in *Slutsky v. Am. Express Travel Related Servs. Co.* (*In re William Cargile Contr.*), 209 B.R. 435 (6th Cir. B.A.P. 1997), there was "no dispute that the Trustee properly served Western with the summons and complaint, and Western admit[ted] receiving the complaint." *Id.* at 437. Instead, the issue on appeal there was the bankruptcy court's ruling "that Western was not afforded adequate due process when the Trustee failed to serve the motion for default judgment on Western." *Id.* The court found that Western waited too long to move to vacate the default judgment because although it was validly served and had notice of the judgment it waited nearly 18 months before appearing in the action and moving to vacate the judgment. *Id.* at 438-39. The Trustee acknowledges that *Slutsky*'s facts make it inapplicable here, but nonetheless maintains that it is instructive because the court there held that a party's delay in bringing a motion to vacate is a relevant factor. [Adv. Docket No. 52, p. 13]. But *Slutsky* and the cases from which it descends are all based on the court undoubtedly having acquired jurisdiction over the movant. Where jurisdiction was never acquired due to improper service, the Sixth Circuit has held over and over that the judgment is void and the passage of time does not resurrect it. *See LSJ*, *Atlas*, *supra*.
10

Case 3:15-ap-90079    Doc 53    Filed 08/31/22    Entered 08/31/22 20:32:07    Desc Main
Document      Page 10 of 13

Finally, the Trustee cites to *Rowe v. Pechiney World Trade Inc. (In re Computrex Int'l, Inc.)*, 433 B.R. 197 (Bankr. W.D. Ky. 2010), which held that Rule 60(b)(4) motions are governed by a timeliness standard even if the court never acquired personal jurisdiction over the defendant. With all due respect to that court, its holding was in error. The *Rowe* court acknowledged that it is the rule in the "Second, Third, Fifth, Seventh, and Eleventh Circuit[s]" that there is no time limitation for Rule 60(b)(4) motions where the court had no jurisdiction, but held that "the law in the Sixth Circuit is different." *Id.* at 201. In support, it cited to *Patel*, in which, as discussed above, the court did have jurisdiction over the defendant. It also cited *United States v. Dailide*, 316 F.3d 611 (6th Cir. 2003), which held that a party clearly subject to the court's personal jurisdiction may not collaterally attack the court's subject matter jurisdiction years after entry of judgment in an action it fully litigated on the merits. *Id.* at 617-18. Coney Island, by contrast, was never subject to this Court's jurisdiction, did not participate in the litigation, and is not making a collateral attack.

The *Rowe* court also cited *Manohar v. Massillon Community Hosp.*, 208 F.3d 214 (6th Cir. 2000) (opinion at 2000 U.S. App. LEXIS 4867). There, plaintiff filed a civil rights action in federal court against a non-governmental entity. *Id.* at *2. Shortly thereafter, the parties stipulated to dismissal of the action with prejudice, which the court "so ordered." *Id.* Five years later, plaintiff re-filed his action in state court, which dismissed it because he stipulated to its dismissal with prejudice in federal court. *Id.* at *2-3. He then moved to vacate the stipulated voluntary dismissal in federal court pursuant to Rule 60(b)(4), arguing that that court lacked subject matter jurisdiction to preside over the case. *Id.* at *3. The district court denied the motion, and the Sixth Circuit affirmed. Like in *Dailide*, the court held that plaintiff failed to explain why he waited more than five years to vacate his voluntary stipulation. *Id.* Again, these facts are patently different from those in this case. Manohar was the plaintiff, and therefore subject to the court's personal

11

jurisdiction. Coney Island never was. Moreover, Manohar clearly had notice of the judgment because he voluntarily stipulated to it. Coney Island did not. And in any event, the Sixth Circuit held that the judgment was not void. *Id.* at *4.

Further, *Rowe* has not been cited by any court since its issuance. And Sixth Circuit decisions issued after *Rowe*, as well as district courts in the 6th Circuit, disagree with it. *See, e.g., Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011) ("if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)" (citing *Atlas, supra*)); *Salem Pointe Capital, LLC v. Bep Rarity Bay, LLC*, 2020 WL 4604454, 2020 U.S. Dist. LEXIS 143785, at *13 (E.D. Tenn. Aug. 11, 2020) ("Under Rule 60(b)(4), a void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside" (internal quotation marks and citation omitted)). If the Trustee and the *Rowe* court are correct that a void judgment may or may not be vacated based upon passage of time, then courts certainly do have discretion when deciding Rule 60(b)(4) motions inasmuch as it must be within a court's discretion to determine how much time is too much. Such discretion stands in conflict with the Sixth Circuit's repeated holding that a void judgment is void regardless of when entered and courts have no discretion in this regard. This Court should follow the clear dictates of the Sixth Circuit.

Lastly, contrary to the Trustee's suggestion, Coney Island did not delay in filing its motion. As set forth in its moving papers, Coney Island learned of the judgment in February 2021 when – *five years* after its entry – the Trustee moved to register it in the Southern District of New York and served an information subpoena upon Coney Island's bank. (Ginzburg Decl., Exs. 6-8). After brief negotiations were unsuccessful, Coney Island quickly moved in that district to vacate the judgment. (*Id.*, Ex. 9). Thus, unlike the defendant in *Rowe* – who spoke with the Trustee's counsel

concerning the judgment and still waited 22 months before making its motion, 433 B.R. at 200 – Coney Island did not delay.

## Conclusion

For the foregoing reasons, the Court should enter an order (a) voiding and vacating the Judgment, and (b) directing the Trustee to return to Coney Island the amount of the seized funds.

Dated: August 31, 2022	Respectfully Submitted:


/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
2416 21st Avenue South, Suite 303
Nashville, TN 37212
629.777.6519
ned@dhnashville.com


Outside Counsel:

Daniel Ginzburg
*Admitted Pro Hac Vice*
The Ginzburg Law Firm, P.C.
200 Village Center Drive, Unit 7045
Freehold, NJ 07728
(732) 284-3841
daniel@ginzburglawfirm.com

*Counsel to Defendant*
*Coney Island Auto Parts Unlimited, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, a true and correct copy of the foregoing was electronically filed and served via the Court's CM/ECF system upon all parties who have filed a written request for notices.

/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV